UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENNIE HUBBARD, #141527,

Plaintiff,

v.

PRISON HEALTH SERVICES, SERVICES, INC., MICHIGAN DEPARTMENT OF CORRECTIONS, WARDEN OLSON, RUM LALONDE, RUM LEMON, RUM MANSFIELD, DEPUTY WARDEN MacLAREN, CAPTAIN ANDRZEJAK, IAN MCDONALD, NURSE WILSON, GREG McQUIGGIN, and BROWN,

Defendants.
_______________________________/

CIVIL ACTION NO. 10-14390

DISTRICT JUDGE LAWRENCE P. ZATKOFF

MAGISTRATE JUDGE MARK A. RANDON

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT MDOC'S MOTION TO DISMISS (DKT. 12) AND TO DENY DEFENDANT WILSON'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (DKT. 20)**

Plaintiff Benny Hubbard ("Plaintiff"), a prisoner proceeding *pro se*, filed a 42-page civil rights complaint under 42 U.S.C. § 1983 against numerous Defendants, alleging constitutional violations relating to the conditions of his confinement and to his lack of adequate medical care.

Presently before the Court are Defendant Michigan Department of Corrections' ("Defendant MDOC") motion to dismiss (Dkt. No. 12) and Defendant Susan Wilson's ("Defendant Wilson") motion to dismiss and/or for summary judgment (Dkt. No. 20). Judge Lawrence P. Zatkoff has referred all pre-trial proceedings to the undersigned (Dkt. No. 27). For the reasons set forth below, it is **RECOMMENDED** that Defendant MDOC's motion to dismiss

be **GRANTED** and that Defendant Wilson's motion to dismiss and/or for summary judgment be **DENIED**.

## I. FACTUAL BACKGROUND

On or about November 2, 2010, Plaintiff filed suit challenging the conditions of his confinement and alleging various claims of deliberate indifference to his serious medical needs. The present Report and Recommendation analyzes the dispositive motions of Defendants MDOC and Wilson, so only Plaintiff's allegations against those Defendants will be discussed.

Plaintiff's Complaint does not appear to make any direct allegations against Defendant MDOC. Rather, Plaintiff alleges generally that he was denied protective custody (and subsequently assaulted by other inmates) and that medical staff were deliberately indifferent to his serious medical needs. In any event, Plaintiff did not file a response to Defendant MDOC's motion to dismiss, despite being ordered to do so (Dkt. No. 29).

As to Defendant Wilson – a Nurse Practitioner – Plaintiff alleges that she was deliberately indifferent to his serious medical needs. Plaintiff's allegations against Defendant Wilson arise out of incidents that allegedly occurred in October 2007 at the Kinross Correctional Facility ("Kinross"), where Plaintiff was incarcerated at the time (Dkt. No. 1, Compl., pp. 17-23). With respect to Defendant Wilson, Plaintiff generally alleges in his "List of Defendants" as follows: "Nurse Practitioner Wilson: Refusal to treat, refusal to have x-rays of broken ribs done, interfering with prescribed treatment by refusing to get pain meds prescribed by E.R. Dr. filled, refusal to give me <u>anything</u> for the very severe pain I was suffering. Deliberate indifference to my serious medical needs, infliction of mental anguish, retaliatory actions" (Dkt. No. 1, p. 1) (emphasis in original).

Plaintiff then sets forth more specific allegations against Defendant Wilson between pages 17 and 23 of his Complaint (Dkt. No. 1, pp. 17-23). In particular, Plaintiff alleges that he was transferred to Kinross on October 8, 2007, with several other inmates who knew that Plaintiff was prescribed drugs that "people can 'get high' on" (Dkt. No. 1, p. 17). Plaintiff claims that, as a result, he was requested by various inmates to "cheek" his medications and then sell the medications to them (Dkt. No. 1, pp. 17-18). On October 15, 2007, Plaintiff tried to "cheek" his medications, but was caught (Dkt. No. 1, pp. 17-19). Plaintiff alleges that the inmates who were expecting to receive his medications were not happy and that he was "jumped" in the restroom by unknown inmates during the evening of October 15, 2007 (Dkt. No. 1, pp. 18-19).

According to Plaintiff's complaint, after being assaulted, he initially experienced little pain, but as the adrenalin wore off, he began to feel a lot of pain on his left side (Dkt. No. 1, p. 20). Plaintiff, therefore, asked a corrections officer to let him see a nurse (Dkt. No. 1, p. 20). The officer called a nurse on the telephone and permitted Plaintiff to speak to the nurse (Dkt. No. 1, p. 20). Plaintiff claims that he told the nurse over the phone that he thought he had a broken rib and that he was injured playing basketball (because he was afraid that the inmates who allegedly assaulted him would be listening to his conversation) (Dkt. No. 1, p. 20). Plaintiff alleges that the nurse told him that "they" don't treat broken ribs and advised Plaintiff to take some ibuprofen that he could purchase from the prison store (Dkt. No. 1, pp. 20-21).

Plaintiff claims that he completed health care request forms or "kites" on October 15, 2007, October 17, 2007, October 19, 2007, October 20, 2007, and October 21, 2007, but received no response to any of his requests (Dkt. No. 1, p. 21). He allegedly became so frustrated and

desperate with his situation that, in the late hours of October 22, 2007, or the early morning hours of October 23, 2007, he intentionally cut his wrist (Dkt 1, p. 21). Plaintiff alleges that he was found unconscious and taken to the emergency room at War Memorial Hospital in Sault Ste. Marie, Michigan (Dkt. No. 1, p. 21). There, he told the emergency room physician why he cut his wrist, and alleges that the emergency room physician obtained x-rays of Plaintiff's ribs, which showed that two were in fact broken (Dkt. No. 1, p. 21). Plaintiff claims that the emergency room physician wrote a prescription for pain medication, but advised Plaintiff that he did not know whether he would be able to receive it in the prison (Dkt. No. 1, p. 22).

Plaintiff saw Defendant Wilson, later in the day on October 23, 2007. He alleges that Defendant Wilson was furious that he "tried to usurp her authority" (Dkt. No. 1, p. 22). Plaintiff claims that he told Defendant Wilson he was just reacting to the intolerable pain he was experiencing but that she said, "A lot of good it did [you] [be]cause [you] are still gonna be in pain" (Dkt. No. 1, p. 22). Plaintiff then alleges that he mentioned the pain medications prescribed by the emergency room physician to Defendant Wilson, but she responded, "Good luck with that. We're done here" (Dkt. No. 1, p. 22). Plaintiff claims that Defendant Wilson then terminated his visit with her because (according to Defendant Wilson) Plaintiff became loud, argumentative, and uncooperative, and a guard had to be called to come and retrieve Plaintiff from her office (Dkt. No. 1, p. 22). As a result of the above allegations, Plaintiff claims that Defendant Wilson was deliberately indifferent to his serious medical needs and intentionally inflicted emotional distress upon him (Dkt. No. 1, pp. 22-23).

## II. ANALYSIS

### *A. Standard for Motions to Dismiss*

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. Under Fed. R. of Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. __ (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *See Iqbal*. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### *B. Standard for Motions for Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

### *C. Defendant MDOC*

Plaintiff failed to file a response to Defendant MDOC's motion to dismiss, despite being ordered to do so by the Court (Dkt. No. 29). Thus, this motion is unopposed. The local court rules in the Eastern District of Michigan (as amended effective March 1, 2010) required Plaintiff

to file a response if he opposed Defendant MDOC's motion. *See* E.D. Mich. LR 7.1(c)(1) ("[a] respondent opposing a motion must file a response, including a brief and supporting documents then available"); E.D. Mich. LR 7.1(e)(1) (B) ("[a] response to a dispositive motion must be filed within 21 days after service of the motion"). "[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." *Humphrey v. United States Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008), quoting *Scott v. State of Tennessee*, No. 88-6095, 1989 WL 72470 at *2 (6th Cir. July 3, 1989) (granting the defendants' unopposed motion to dismiss). *See, e.g., Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ( "[f]ailure to follow a district court's local rules is a proper ground for dismissal); *McKinzy v. Unified Government of Wyandotte County/Kansas City, KS*, No. 09-2199-EFM-DWB, 2010 WL 2719852 at *2 (D.Kan. July 8, 2010) (court could grant the defendants' unopposed motion to dismiss and for sanctions "with little further consideration" where the plaintiff failed to file a responsive brief as required by the local court rules); *Zayed v. United States*, 221 F.Supp.2d 813, 815 FN1 (N.D. Ohio 2002) (court is within its discretion to consider the defendant's motion to dismiss as unopposed due to the plaintiff's lack of a timely response under the local court rule, observing that "these motions are often granted").

Notwithstanding Plaintiff's lack of opposition to Defendant MDOC's motion to dismiss, the legal arguments presented in the motion are well-taken. The MDOC is not a "person" who may be sued under § 1983. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Therefore, Plaintiff has failed to state a claim upon which relief may be granted against Defendant MDOC. Moreover, Plaintiff has failed to state a claim because the states and their departments are immune under the Eleventh Amendment from suit in the federal courts if the

state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Therefore, Plaintiff's claims against Defendant MDOC should be dismissed, with prejudice.

***D. Defendant Wilson***

Defendant Wilson raises three arguments in her dispositive motion: (1) that Plaintiff failed to exhaust his administrative remedies against Defendant Wilson; (2) that Plaintiff failed to state a claim against Defendant Wilson; and (3) that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law intentional infliction of emotional distress claim and – even if the Court does exercise supplemental jurisdiction over this claim – Plaintiff has failed to state a valid claim for intentional infliction of emotional distress against Defendant Wilson. Each argument is considered below:

**1. Exhaustion Under the Prisoner Litigation Reform Act**

The failure to exhaust administrative remedies is an affirmative defense to a civil suit brought by a prisoner. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). More specifically, the Prisoner Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 918–19 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The exhaustion requirement is justified on two grounds. First, it gives prisoners "an effective incentive to make

full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Woodford v. Ngo*, 548 U.S. 81, 94 (2002). Additionally, the requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204.

The exhaustion prerequisite applies to all inmate suits about prison life – regardless of the nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (rejecting claim that prisoner had no duty to exhaust where monetary damages could not be awarded through the administrative process; reasoning that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."). Moreover, the prisoner must "properly" exhaust his claims, which requires "'complet[ing] the administrative review process in accordance with the applicable procedural rules' – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218.

"[A] prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof." *Vandiver v. Correctional Medical Services, Inc.*, 326 Fed. Appx. 885, 888 (6th Cir. 2009), citing *Jones*, 549 U.S. at 217-220. A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254,

259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

**2. MDOC's Policy Directive 03.02.130**

MDOC Policy Directive 03.02.130 (effective July 9, 2007) ("Policy Directive") sets forth the procedures that govern the grievances filed by Plaintiff (Dkt. No. 20, Ex. 2; Attachment 1). The Policy Directive provides that prior to filing a grievance, an inmate must attempt to resolve the problem orally with the person-to-be-grieved "within two business days after becoming aware of a grievable issue" (*Id.* ¶ P). If this attempt at resolution fails, the inmate then has five business days to file a Step I grievance form (*Id.*). In completing grievance forms, "[t]he issues shall be stated briefly but concisely. Information provided shall be limited to the facts involving the issue being grieved (*i.e.*, who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included" (*Id.* ¶ R). The inmate submits the completed Step I form to "the Step I Grievance Coordinator designated for the facility," who then assigns it to a respondent (*Id.* ¶¶ V, X).

If the inmate is dissatisfied with the Step I response, he may appeal by requesting a Step II appeal form from the Step I Grievance Coordinator (*Id.*) The prisoner must then send a completed Step II grievance form to the Step II Grievance Coordinator within ten business days of the Step I response, or, if the Step I response was untimely (the respondent has 15 days from receipt of a Step I grievance, absent an extension), within ten days of the response deadline ( *Id.*)

The respondent at Step II varies; for grievances regarding health care issues the respondent is "the Regional Health Administrator or designee" ( *Id*. ¶¶ DD).

If the prisoner remains dissatisfied, he may appeal his grievance to Step III (*Id.* ¶ FF). To do so, he must send a completed Step III form to the Grievance and Appeals Section, located in Lansing, Michigan, within ten business days of receiving the Step II response, or if the Step II response is not timely, within ten business days after the Step II response deadline (*Id*. ¶¶ N, FF, GG). "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II" (*Id*. ¶ S).

**3. Plaintiff's Grievances**

As noted in Section I above, Plaintiff's claims against Defendant Wilson relate to incidents that allegedly occurred in October 2007, while Plaintiff was incarcerated at Kinross (*See* Dkt. No. 1, pp. 17-23). Defendant Wilson avers that, from October 2007 through the present, the MDOC has records of five grievances that Plaintiff pursued all the way through Step III of the MDOC's administrative grievance process (Dkt. No. 20; Ex. A, ¶17, Attachment 2), which are: (1) KCF-2007-12-01607-19e (Dkt. No. 20; Ex. A, Attachment 3); (2) URF-2008-06-01045-03b (Dkt. No. 20; Ex. A, Attachment 4); (3) URF-2009-11-03452-26a (Dkt. No. 20; Ex. A, Attachment 5); (4) URF-2009-12-03727-03b (Dkt. No. 20; Ex. A, Attachment 6); and (5) URF-10-04-01332-12d3 (Dkt. No. 20; Ex. A, Attachment 7).

Of the five exhausted grievances that MDOC has on file, only one grievance was filed while Plaintiff was incarcerated at Kinross, where the alleged incidents involving Defendant Wilson occurred. That grievance is KCF-2007-12-01607-19e (Dkt. No. 20; Ex. A, Attachment

3). However, this grievance was not filed against Defendant Wilson and the incidents being grieved therein did not involve the incidents alleged against Defendant Wilson in the Complaint – indeed, grievance KCF-2007-12-01607 relates to Plaintiff's personal property being misplaced rather than deliberate indifference to serious medical needs (Dkt. No. 20; Ex. A, Attachment 3).

Furthermore, Defendant Wilson avers that Plaintiff did not name her in any of the other four grievances that were filed and exhausted through Step III, after Plaintiff was transferred to the Chippewa Correctional Facility on or about November 1, 2007. Defendant Wilson also notes that Plaintiff did not set forth any of the factual allegations raised against Defendant Wilson in the Complaint in any of his other four exhausted grievances (Dkt. No. 20; Ex. A, Attachments 4-7). Accordingly, Defendant Wilson contends that Plaintiff did not exhaust his administrative remedies against her and that his claims in relation to her must be dismissed.

Plaintiff attached two exhibits to his response to Defendant Wilson's dispositive motion (Dkt. No. 33; Exs. A & B). Exhibit B is a grievance appeal form for grievance # KCF 07 10 1463 12f (Dkt. No. 33; Ex. B). The "Step II" portion of this document is dated November 20, 2007 and reads, in pertinent part: "I was <u>repeatedly</u> denied x-rays & pain meds" (emphasis in original). The timing of this Step II grievance appeal and the conduct grieved therein clearly relate to the alleged unlawful conduct of Defendant Wilson. Furthermore, Exhibit A to Plaintiff's response brief is a Step II "grievance appeal receipt," relating to grievance # KCF 07 10 1463 12f, which states that Plaintiff's Step II appeal was received by MDOC staff on November 21, 2007 (Dkt. No. 33; Ex. A). Thus, Kinross officials clearly received a Step II appeal from Plaintiff relating to Defendant Wilson's conduct. Again, the timing of this Step II

appeal (November 2007) and the allegations concerning denial of x-rays and pain medication clearly relate to the alleged unlawful conduct of Defendant Wilson.

The only remaining question, then, is whether Plaintiff appealed this grievance through Step III. MDOC records do not indicate that this grievance was pursued through Step III (*See* Dkt. No. 20; Ex. 2; Attachment 2; MDOC Step III Grievance Report). However, the Step III portion of the document attached to Plaintiff's response brief (Dkt. No. 33; Ex. B) is filled out and reads: "Issues not resolved. There is no justification for P.A. (sic) Wilson not getting my ribs x-rayed, nor for refusing to have the prescription for pain meds ordered by the E.R. Dr. filled" (*Id.*) Plaintiff avers that he pursued this grievance all the way "thru 'Step III'" but that no one from MDOC ever responded (Dkt. No. 33, p. 1). Furthermore, in a sur-reply brief (Dkt. No. 39), Plaintiff emphatically asserts that he did exhaust this grievance all the way through Step III.

At this stage of the proceedings, the Court is required to view the evidence and draw all inferences in favor of the non-moving party, here Plaintiff. As such, I find that Plaintiff has shown enough to indicate that he did indeed exhaust his administrative remedies against Defendant Wilson. Plaintiff attached a completed Step III grievance form relating to his allegations against Defendant Wilson and Plaintiff claims that he sent this form to Lansing; this is enough at this stage in the proceedings to show that Plaintiff exhausted his administrative remedies against Defendant Wilson. As such, the argument in Defendant Wilson's motion to dismiss and/or for summary judgment that Plaintiff failed to exhaust his administrative remedies against Defendant Wilson is not well-taken.

### 3. Plaintiff Has Stated a Claim Against Defendant Wilson

Defendant Wilson next argues that Plaintiff has failed to state a claim against her upon which relief can be granted. In particular, Defendant Wilson contends that Plaintiff has not stated a plausible claim of deliberate indifference.

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *See Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Here, Plaintiff alleges that Defendant Wilson maliciously withheld pain medication that was prescribed by an emergency room physician for Plaintiff's broken ribs. Also, it is unclear at this stage of the proceedings whether Defendant Wilson was the nurse that Plaintiff first spoke to on the phone regarding his rib injury – *i.e.*, the person who allegedly refused Plaintiff's pleas for x-rays and treatment of his broken ribs. In any event, all of Plaintiff's allegations at this stage of the litigation must be accepted as true. Whether discovery will bear out Plaintiff's allegations against Defendant Wilson out remains to be seen. At this point of the proceedings, however, I find that Plaintiff has stated a facially plausible claim of deliberate indifference against Defendant Wilson. Therefore, it is recommended that Defendant Wilson's motion to dismiss and/or for summary judgment be denied since Plaintiff has stated a claim against Defendant Wilson.

**4. Intentional Infliction of Emotional Distress**

Finally, Defendant Wilson's motion also requests that the Court decline to exercise supplemental jurisdiction over the state law claim for intentional infliction of emotional distress

("IIED"). Pursuant to 28 U.S.C. § 1367, the Court has discretion to exercise supplemental jurisdiction over state law claims. *See Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Because I find that Plaintiff's federal claims against Defendant Wilson should remain pending, the Court should deny Defendant Wilson's motion and exercise supplemental jurisdiction over Plaintiff's state law claim at this juncture. Given that the federal and state law claims arise of the same facts, consideration of judicial economy, costs savings, and fairness to the litigants weigh in favor of retaining the state law claims. The federal and state claims will involve the same witnesses and the same discovery. Given the close relationship between the claims, there is no reason to duplicate judicial or attorney resources in developing these claims in parallel state court litigation.

Furthermore, I find that Plaintiff has stated a facially plausible IIED claim against Defendant Wilson. To state a claim for IIED, Plaintiff must plead: 1) extreme and outrageous conduct; 2) intent or recklessness; 3) causation; and 4) severe emotional distress. *Roberts v. Auto-Owners Ins., Co.*, 422 Mich. 594, 602 (1985). The Michigan Supreme Court has never officially recognized a cause of action for IIED, but has implied that it would do so if presented with the right facts. *See id.*, 422 Mich. at 611. Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 602-03 (quoting Restatement (Second) of Torts, § 46, cmt. d, at 72-73).

*Pro se* litigants "enjoy the benefit of a liberal construction of [their] pleadings and filings," *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). A sympathetic reading of

Plaintiff's Complaint leads to the conclusion that Plaintiff stated a valid IIED claim against Defendant Wilson. Again, whether discovery will bear out Plaintiff's IIED allegations remains to be seen. But, at this junction in the litigation, I find that Plaintiff's IIED claim against Defendant Wilson should proceed.

## III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant MDOC's motion to dismiss be **GRANTED** and that Defendant Wilson's motion to dismiss and/or for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: July 29, 2011

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, July 29, 2011, by electronic and/or first class U.S. mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*