UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENNIE HUBBARD, #141527,

    Plaintiff,

v.                                                                            Case No. 10-14390
                                                                          Hon. Lawrence P. Zatkoff

PRISON HEALTH SERVICES, INC.,
MICHIGAN DEPT. OF CORRECTIONS,
WARDEN OLSON, RUM LALONDE,
RUM LEMON, RUM MANSFIELD,
DEPUTY WARDEN MACLAREN,
CAPTAIN ANDRZEJAK, IAN MCDONALD,
NURSE WILSON, GREG MCQUIGGEN, AND
MICHAEL BROWN,

    Defendants.

                                                            /

## ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 30, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Magistrate Judge Randon's Report and Recommendation ("Report") [dkt 59], in which the Magistrate Judge recommends that the Court grant in part and deny in part Defendants Kathy Olson, David LaLonde, Gregory McQuiggen, Duncan MacLaren, Ian McDonald, Donald Mansfield, John Andrzejak and Michael Brown's (collectively the "MDOC Defendants") Motion for Summary Judgment [dkt 40], and deny Defendant Prison Health Services, Inc.'s ("PHS") Motion to Dismiss [dkt 44]. Plaintiff, PHS,

and MDOC Defendants have each filed timely objections to the portions of the Report and Recommendation relevant to each, respectively.

The Magistrate's Report recommends dismissing Defendant McQuiggen because Plaintiff has failed to allege personal involvement by Defendant McQuiggen sufficient to impose liability under 42 U.S.C. § 1983 ("§ 1983").  The Report also recommends that, to the extent Plaintiff seeks monetary damages from MDOC Defendants for violations of § 1983 occurring while these Defendants were acting in their official capacities, those claims are barred by the Eleventh Amendment and should be dismissed from this suit.  As to these claims, the Court ADOPTS the Report and Recommendation and enters it as the findings and conclusions of this Court.

The Magistrate's Report recommends denying MDOC Defendant's Motion for Summary Judgment with respect to the argument therein that Plaintiff failed to exhaust his administrative remedies ("failure-to-exhaust" claim).  The Report also recommends denying Defendant PHS's Motion to Dismiss, finding that Plaintiff has stated a valid claim against PHS.  As to these recommendations, the Court REJECTS the Magistrate Judge's Report and Recommendation. For the reasons set forth below, MDOC Defendants' Motion for Summary Judgment, and PHS's Motion to Dismiss, are GRANTED in their entirety.

## II.  BACKGROUND

On or about November 2, 2010, Plaintiff filed suit challenging the conditions of his confinement and alleging various claims of deliberate indifference to his serious medical needs. As previously noted, there are two motions presently before the Court, brought by two separate sets of Defendants.  Plaintiff's allegations against each set of Defendants are as follows:

**A. THE MDOC DEFENDANTS**

At all times relevant to the allegations in his Complaint, Plaintiff was incarcerated at the Kinross Correctional Facility ("KCF") or at the Chippewa Correctional Facility ("URF").[1] The MDOC Defendants are KCF Assistant Deputy Warden (ADW) Kathy Olson ("Olson") and Resident Unit Manager (RUM) David LaLonde ("LaLonde") and URF Warden Gregory McQuiggen ("McQuiggen"), Deputy Warden (DW) Duncan MacLaren ("MacLaren"), Inspector Ian McDonald ("McDonald"), RUM Donald Mansfield ("Mansfield"), Captain John Andrzejak ("Andrzejak") and Lieutenant Michael Brown ("Brown").

Plaintiff's Complaint alleges that, while he was incarcerated at KCF, Olson and LaLonde denied his request for protective segregation and increased his security level, resulting in his transfer to URF. Plaintiff also alleges that, while he was incarcerated at URF, Mansfield was present when a member of a Security Classification Committee ordered that Plaintiff be transferred to a different housing unit. Despite this, Plaintiff alleges that MacLaren and Andrzejak sent him back to his previous housing unit with an inmate that had previously assaulted him. Plaintiff alleges that McDonald refused to investigate a December 28, 2007, assault against him, wrote a retaliatory major misconduct report, and did not adequately investigate his June 2008 request for protection or an October 2009 incident during which Plaintiff's leg was broken. Plaintiff alleges that McQuiggen failed to personally investigate the incident in which he suffered a broken leg and failed to take steps to repair a broken security mirror in health services. Finally, Plaintiff alleges that Brown provided inaccurate information regarding a witness questionnaire concerning major misconducts for fighting and assault and battery. Plaintiff sues all the MDOC Defendants in their official and individual capacities.

---

[1] The Chippewa Correctional Facility is commonly referred to as the "Upper Regional Facility," and the Michigan Department of Corrections identifies this facility using the acronym "URF." Accordingly, the Court will refer to this facility as "URF."

3

**B. DEFENDANT PHS**

Plaintiff's claims against Defendant PHS relate to an alleged improper treatment of a broken leg he suffered in October 2009.[2] First, Plaintiff alleges that he did not receive surgery for his broken leg until November 12, 2009—fifteen days after the date it was determined he needed surgery. Plaintiff alleges that this delay was due to his surgeon, Dr. Woolever, and PHS disagreeing over costs. Next, Plaintiff alleges that someone failed to provide him with medication for the pain he suffered between the date of his surgery and April of 2010. Third, Plaintiff complains that from January 2010 through April 2010, he was ineffectively treated with antibiotics for infections to his surgical wound, instead of being scheduled for a consultation with an orthopedic surgeon for removal of the screw implanted in his ankle. Plaintiff's claim against PHS appears to be based on an allegation that he received substandard care for "nonmedical reasons"—namely, cost or financial reasons. Specifically, Plaintiff states: "Prison health care provider persisted in the ineffective treatment to avoid the cost of sending me back to the surgeon and did so *most likely* at the behest of one or more of his superiors. PHS and MDOC put their financial interests ahead of my health and welfare".

### III. LEGAL STANDARD

**A. SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[2] According to Plaintiff, his leg was broken by a corrections officer who was responding to a fight between Plaintiff and another inmate. Plaintiff claims that a metal rod was inserted into his lower leg and held in place by screws in his knee and ankle. Plaintiff's allegations consist primarily of an alleged delay by PHS in treating his broken leg, and its failure to adequately treat complications that occurred in his ankle where a screw was implanted.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**B. DISMISSAL PURSUANT TO FED. R. CIV. P. 12(B)(6)**

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *See Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009). In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).

## IV. ANALYSIS

MDOC Defendants set forth three arguments in their Motion for Summary Judgment: (1) that Plaintiff failed to exhaust his administrative remedies; (2) that Plaintiff does not adequately allege that McQuiggen was personally involved in any unconstitutional conduct; and (3) that Plaintiff's claims against the MDOC Defendants in their official capacity are barred by the Eleventh Amendment. Defendant PHS has moved for dismissal alleging that Plaintiff has failed to state an adequate claim. As noted, the Court shall adopt the Magistrate Judge's Report

6

with respect to MDOC Defendants' second and third arguments. For the reasons below, however, the Court rejects the Magistrate Judge's recommendation as to MDOC Defendants' failure-to-exhaust claim and PHS's Motion to Dismiss.

### A. MDOC DEFENDANTS' ADMINISTRATIVE EXHAUSTION CLAIM

In his Report, the Magistrate Judge sought to apply the reasoning in his previous Report and Recommendation [dkt 49], in which he recommended the Court deny Defendant Nurse Practitioner Wilson's ("Wilson") failure-to-exhaust claim. The Magistrate Judge states in the instant Report that:

> The Michigan Attorney General previously argued that Plaintiff failed to exhaust his administrative remedies in a motion to dismiss filed on behalf of Defendant Nurse Practitioner Wilson (Dkt. No. 12). The Attorney General now raises a virtually identical argument on behalf of the MDOC Defendants. The undersigned recommended that Defendant Wilson's argument that Plaintiff failed to exhaust his administrative remedies was not well-taken (Dkt. No. 49) and that Defendant Wilson's motion to dismiss should be denied. The Attorney General, on behalf of Defendant Wilson, did not object to this recommended disposition, and the Court adopted (Dkt. No. 53) the undersigned's recommendation as its own finding and conclusion. The same finding and conclusion is equally applicable to the MDOC Defendants, and their argument that Plaintiff failed to exhaust his administrative remedies is not well-taken. As such, the MDOC Defendants' motion for summary judgment should be denied as to the argument that Plaintiff failed to exhaust his administrative remedies.

The Magistrate Judge was misguided in re-applying his recommendation regarding Wilson to MDOC Defendants' motion. While it is correct that the Michigan Department of Attorney General ("AG") filed a motion to dismiss, that motion was on behalf of institutional Defendant Michigan Department of Corrections, not Wilson [*see* dkt 12]. Additionally, that motion did not raise exhaustion of administrative remedies, instead only claiming that Plaintiff's claim against the MDOC was barred by Eleventh Amendment immunity. Wilson's privately retained counsel filed a motion to dismiss and/or motion for summary judgment [dkt 20] which raised the issue of

failure to exhaust administrative remedies as to the claims against Wilson. While the Report correctly notes that the AG did not object to the recommendation that Wilson's failure-to-exhaust claim was not well-taken, this was to be expected, as the AG was not Wilson's counsel. As such, it was erroneous for the Magistrate Judge to re-apply his previous reasoning to the MDOC Defendants' failure-to-exhaust claim. The Court will now address the merits of the MDOC Defendants' failure-to-exhaust claim.

*1. Exhaustion of Administrative Remedies*

The Prisoner Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

The exhaustion prerequisite applies to all lawsuits brought by inmates and pertaining to prison life—regardless of the nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, the prisoner must "properly" exhaust his claims, which requires "complet[ing] the administrative review process in accordance with the applicable procedural rules— rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (internal quotation marks omitted).

"[A] prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof." *Vandiver v. Correctional Medical Services, Inc.*, 326 Fed. Appx. 885, 888 (6th Cir. 2009) (citing *Jones*, 549 U.S. at 216). "Where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other

than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).

  *2. MDOC Policy Directive 03.02.130*

  The Michigan Department of Corrections maintains an administrative grievance process that is set forth in MDOC Policy Directive 03.02.130 (effective July 9, 2007) ("Policy Directive"). The Policy Directive was in effect during the time period relevant to Plaintiff's claims. The Policy Directive provides that, prior to filing a grievance, an inmate must attempt to resolve the problem orally "within two business days after becoming aware of a grievable issue" *Id*. at ¶ P. Should this attempt at resolution fails, the inmate then has five business days to file a Step I grievance form. *Id*. In completing grievance forms, "[t]he issues shall be stated briefly but concisely. Information provided shall be limited to the facts involving the issue being grieved (*i.e*., who, what, when, where, why, how). *Dates, times, places and names of all those involved in the issue being grieved are to be included.*" *Id*. at ¶ R (emphasis added). The inmate submits the completed Step I form to "the Step I Grievance Coordinator designated for the facility," who then assigns it to a respondent. *Id*. at ¶¶ V, X.

  If the inmate is dissatisfied with the Step I response, he may appeal by requesting a Step II appeal form from the Step I Grievance Coordinator. *Id*. The prisoner must then send a completed Step II grievance form to the Step II Grievance Coordinator within ten business days of the Step I response, or, if the Step I response was untimely, within ten days of the response deadline. *Id*.

If the prisoner remains dissatisfied, he may appeal his grievance to Step III. *Id.* at ¶ FF. To do so, he must send a completed Step III form to the Grievance and Appeals Section, within ten business days of receiving the Step II response, or if the Step II response is not timely, within ten business days after the Step II response deadline. *Id*. at ¶¶ N, FF, GG.

An untimely grievance, or otherwise improperly filed grievance, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a). Permitting an untimely or otherwise improperly filed grievance, even if appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford v. Ngo*, 548 U.S. 81, 97 (2006). To properly exhaust administrative remedies prisoners "must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200 (internal quotation marks omitted). The Policy Directive requirements, and not the PLRA, "define the boundaries of proper exhaustion." *Id*.

### 3. Defendants Olson and LaLonde

Plaintiff's Complaint alleges that Olson and LaLonde, KCF employees, were indifferent to his Eighth Amendment right to be free from physical harm and refused to protect him. Plaintiff further claims that instead of honoring his request for protection, Olson and LaLonde increased his security level and put him in a more violent environment. The Court finds, however, that Plaintiff has not properly exhausted his administrative remedies as to Olson and LaLonde. Plaintiff did not file a grievance naming them and based on any of the aforementioned claims raised in his Complaint. Rather, Plaintiff filed one Step III grievance appeal while incarcerated at KCF (Grievance KCF-07-12-1607-19e) in which Plaintiff complained that his personal property was not properly inventoried and that he was missing certain items. This

grievance is unrelated to the allegations in Plaintiff's Complaint. As such, Plaintiff has failed to exhaust administrative remedies with respect to his claims against Olson and LaLonde in this case.

   *4. Defendants McQuiggin, MacLaren, McDonald, Mansfield, Andrzejak, and Brown*

Plaintiff has not properly exhausted his claims with respect to Defendants McQuiggin, MacLaren, McDonald, Mansfield, Andrzejak, and Brown. Plaintiff neither filed a grievance naming these Defendants, nor did Plaintiff, in the grievances he did file, raise the issues contained in his Complaint.

Plaintiff filed four Step III grievance appeals while incarcerated at URF. In Grievance URF-08-06-01045-03b, Plaintiff complained that the Security Classification Committee improperly denied his request for protective segregation. While Plaintiff's Complaint contains a similar allegation, the dates involved show that these are two different matters. This grievance is dated June 5, 2008, while the claims made in Plaintiff's Complaint—i.e., that Mansfield knew that Plaintiff was to be transferred, but MacLaren and Captain Andrzejak nevertheless sent Plaintiff back to the same housing unit with an inmate that had previously assaulted him—are listed as having occurred on September 8, 2009. As such, grievance URF-08-06-01045-03b is not relevant to the instant Complaint, and appears to be a separate incident.

In Grievance URF-2009-11-3452-26a, Plaintiff complains that an unidentified corrections officer kicked him in the leg and broke two bones while attempting to break up a fight between Plaintiff and another prisoner. The subject matter of this grievance is not an issue raised in Plaintiff's Complaint. Additionally, there is no allegation in this grievance that McDonald failed to properly investigate this incident, as was alleged by Plaintiff in his complaint.

11

In Grievance URF-2009-12-3727-03b, Plaintiff again refers to his 2008 request for protective segregation and subsequent denial. This grievance does not appear to name any of the MDOC Defendants, and is not relevant to the Complaint allegations.

Finally, in Grievance URF-10-04-1332-12d3, Plaintiff alleges he was inappropriately denied a follow-up appointment with his surgeon after Plaintiff allegedly experienced complications at the site where surgery was completed. Plaintiff's Complaint, however, does not allege any such issues against the MDOC Defendants and does not mention any of these Defendants by name.

The Court thus finds that, given the details of Plaintiff's grievances and Complaint, Plaintiff has not properly exhausted his claims. Plaintiff's grievances and Complaint appear to refer to different events, and his grievances fail to set forth "dates, times, places and names of all those involved in the issue being grieved," as is required by ¶ R of the Policy Directive. Additionally, in his response to MDOC Defendants' motion, Plaintiff did not provide evidence to suggest he exhausted his administrative remedies against the MDOC Defendants, and Plaintiff otherwise fails to adequately address this issue. Instead, Plaintiff only states, in conclusory fashion, that "[MDOC Defendants] violated [his] right to be protected from assaults, [and] were deliberately indifferent in all the ways claimed" and that "administrative remedies were pursued by [him] to no avail." As such, MDOC Defendants are entitled to dismissal because Plaintiff did not properly exhaust his administrative remedies pursuant to the requirements of the Policy Directive.

### B. ARGUMENTS WITH RESPECT TO MCQUIGGEN AND THE ELEVENTH AMENDMENT

As noted, the Court adopts the Magistrate Judge's recommendation with respect to the remaining issues in MDOC Defendants' Motion for Summary Judgment. Although Plaintiff

filed objections to the Magistrate Judge's Report, those objections fail to address the Magistrate Judge's findings with respect to McQuiggen and MDOC Defendants' Eleventh Amendment claim. The Court now turns to PHS's Motion to Dismiss.

### C. PHS'S MOTION TO DISMISS

The Court rejects the Magistrate Judge's recommendation to deny PHS's Motion to Dismiss, and finds that Plaintiff has failed to set forth sufficient facts to support his claims against PHS. It is well-settled that PHS is not vicariously liable for the actions of its employees and thus, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (internal quotations and citations omitted). To establish PHS's liability for a constitutional violation under § 1983, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a deliberate PHS "policy, practice, or custom." *Id*. To establish the existence of a policy, practice, or custom, Plaintiff must demonstrate: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that PHS had notice or constructive notice of such; (3) that PHS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction;" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Thomas,* 398 F.3d at 429 (6th Cir. 2005) (quoting *Doe v. Claiborne Cty*., 103 F.3d 495, 508 (6th Cir. 1996)).

In his Report, the Magistrate Judge relied on the "no-set-of-facts" standard of *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957), under which Plaintiff's Complaint should not be dismissed "unless it appears beyond doubt that [Plaintiff] can prove no set of facts in support of [his] claim which would entitle [Plaintiff] to relief." The U.S. Supreme Court, however, has "recently raised

13

the bar for pleading requirements beyond the old 'no-set-of-facts' standard of [*Conley*]," finding instead that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (citing *Ashcroft v. Iqbal,* --- 129 S.Ct. at 1949; *Twombly,* 550 U.S. at 555)); *see also* Section III-B, *supra*.

Thus, in seeking to prove the existence of such a policy, practice, or custom, Plaintiff must set forth factual allegations amounting to more "than a bare assertion of legal conclusions." *Advocacy Org.*, 176 F.3d at 319. Such allegations must be sufficient to "raise a right to relief above the speculative level[,]" so that Plaintiff's claim is "plausible on its face." *Twombly*, 550 U.S. at 555, 570. Although the Court has a duty to construe a *pro se* plaintiff's pleadings liberally, *see, e.g.*, *Haines v. Kerner*, 404 U.S. 519 (1972), it will not re-write a deficient complaint or otherwise serve as counsel for that plaintiff. *See GJR Invs, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

With respect to his claims against PHS, Plaintiff makes only vague assertions in proposing that he was denied adequate medical care to reduce costs, a claim which other courts have rejected. *See Vickery v. Caruso*, 2008 WL 4058721, at *6 (E.D. Mich. 2008) (granting motion to dismiss for medical provider where plaintiff alleged that procedures at issue were routinely denied for cost reasons). For instance, although Plaintiff concludes that the allegedly inadequate care was due to a cost-cutting policy, he fails to show a "clear and persistent pattern of illegal activity," stating only that the treatment with respect to his leg surgery and its resulting complications was inadequate and untimely. Yet, the fact remains that Plaintiff *did* receive medical care, and fails to allege how or why the allegedly improper delays constituted "illegal activity." *Thomas,* 398 F.3d at 429.

Moreover, Plaintiff's claim that his constitutional rights were "most likely" violated due to financial reasons amounts to a bare assertion of legal conclusion that fails to establish the existence of a specific policy beyond mere speculation. Such broad statements without the requisite factual enhancement amount to nothing more than "threadbare" conclusions that are insufficient to meet the "plausible" claim standard required of even a *pro se* inmate. *See Iqbal,* 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555. Plaintiff's own statements indicate his uncertainty as to whether a specific policy was dictated by PHS, as he states in his Complaint it is unclear "if PHS policy caused the wanton and unnecessary pain [he had] been forced to endure," and that the "prison health care provider persisted in the ineffective treatment to avoid the cost of sending me back to the surgeon and did so *most likely* at the behest of one or more of his superiors." (emphasis added).

As such, Plaintiff failed to set forth sufficient allegations of a "clear and persistent pattern" of illegal activity that was the "moving force" in a deprivation of his rights, and of which PHS had knowledge and tacitly approved. *Thomas,* 398 F.3d at 429.

## V. CONCLUSION

For the reasons stated above, this Court will ADOPT the Magistrate Judge's Report and Recommendation [dkt 59] insofar as it grants MDOC Defendants' Motion for Summary Judgment and PHS's Motion to Dismiss; the Court will REJECT the Report and Recommendation insofar as it denies these motions.

Accordingly, it is hereby ORDERED that MDOC Defendants' Motion for Summary Judgment [dkt 40] is GRANTED in its entirety.

IT IS FURTHER ORDERED that PHS's Motion to Dismiss [dkt 44] is GRANTED.

IT IS SO ORDERED.

Date:	March 30, 2012

s/Lawrence P. Zatkoff<br>
LAWRENCE P. ZATKOFF<br>
U.S. DISTRICT JUDGE